UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**JUANITA RAMIREZ,**

   Plaintiff,

v.                                                            No. 4:22-cv-0930-P

**JONATHAN GRANADO,**

   Defendant.

## MEMORANDUM OPINION & ORDER

Before the Court is defendant Jonathan Granado's Motion for Summary Judgment, contending that he is entitled to the affirmative defense of qualified immunity. ECF No. 32. For the reasons set forth below, the Court **GRANTS** the motion.

## BACKGROUND

This case arises from the shooting death of Estevan Ramirez. On September 3, 2021, Officer Jonathan Granado was taking the night shift at the Lake Worth Police Department headquarters. Around 2:00 a.m., Officer Watson, a fellow officer on patrol, radioed in to request back-up for a high-speed chase. Granado immediately left the department to join the chase.

En route, Watson radioed to Granado that the vehicle's occupants had been involved in more than one drive-by shooting, and that they were considered armed and dangerous. At some points, the chase through the western Fort Worth area exceeded 120 miles per hour. The vehicle drove into oncoming traffic multiple times, deactivated its headlights and taillights in an effort to evade detection, drove through residential areas at dangerous speeds, and even continued the chase after striking a curb and nearly totaling the vehicle.

The chase stopped in a residential area in White Settlement, across the street from a populated gas station. When the vehicle came to a stop, four of its occupants exited and immediately fled on foot in separate directions. Granado next observed Ramirez exit the vehicle with a pistol in his hand. Granado ordered Ramirez to the ground, and Ramirez did not comply. Granado then observed Ramirez drop his gun and immediately pick it back up.

Granado then drew his service weapon and shouted to the other officers that "[Ramirez] has a gun!" Ramirez moved toward Officer Watson and the two began a physical altercation. As Ramirez approached Watson, Granado fired his first shot, but stopped when Ramirez attempted to break Watson's hold—to prevent accidentally hitting Watson. Watson then pushed Ramirez away and attempted to draw his own service pistol. Granado rapidly fired multiple rounds, hitting Ramirez, and stopped again as soon as he perceived Ramirez was disabled. The entire altercation—from stopping the chase to shooting Ramirez—took about eight seconds. Officers attempted CPR on Ramirez until medical personnel arrived at the scene. Ramirez later died of his gunshot wounds at a local hospital.

Plaintiff sued, alleging that Granado and the Lake Worth Police Department unconstitutionally employed deadly force while attempting to apprehend Ramirez, in violation of 42 U.S.C. § 1983. Granado filed the instant motion for summary judgment asserting the affirmative defense of qualified immunity.

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is "genuine" if the evidence presented would allow a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 242–43 (1986). A fact is "material" if it would affect the case's outcome. *Id.* at 248. Generally, the "substantive law will identify which facts are material," and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.*

When determining whether summary judgment is appropriate, the Court views the evidence in the light most favorable to the nonmovant. *See First Am. Title Ins. Co. v. Cont'l Cas. Co.*, 709 F.3d 1170, 1173 (5th Cir. 2013). In conducting its evaluation, the Court may rely on any admissible evidence of record, but it need only consider those materials cited by the parties. FED. R. CIV. P. 56(c)(1)–(3). And the Court need not mine the record to find evidence to support the non-movant; the burden falls on the movant to simply show a lack of evidence supporting the nonmovant's case. *See Malacara v. Garber*, 353 F.3d 393, 404–05 (5th Cir. 2003).

## ANALYSIS

To establish a claim for the excessive use of force, a plaintiff must show: (1) an injury; (2) which resulted directly and only from the use of force that was clearly excessive; and (3) that the excessiveness of the force was clearly unreasonable. *Orr v. Copeland*, 844 F.3d 484, 492 (5th Cir. 2016).

But government officials performing discretionary functions—functions requiring independent judgment apart from a ministerial task—are generally shielded from suit if their conduct does not violate clearly established statutory or constitutional rights. *Ramirez v. Guadarrama*, 3 F.4th 129, 133 (5th Cir. 2021). "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). When a defendant invokes qualified immunity, the burden rests on the plaintiff to demonstrate that qualified immunity is inapplicable. *Ramirez*, 3 F.4th at 133.

To defeat an assertion of qualified immunity, a plaintiff must show: (1) the violation of a constitutional or statutory right; and (2) that the right in question was clearly established at the time of the alleged violation. *Id.*; *Pearson*, 555 U.S. at 236. The district court may address either prong first. *Id.* To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v.*

3

*Creighton*, 483 U.S. 635, 640 (1987). For purposes of qualified immunity, the reasonableness of the official's conduct and the clarity of the right in question are merged into one question. *Ramirez*, 3 F.4th at 133–34.

Because the dispositive inquiry is whether Granado's use of deadly force at the scene was justified, the Court will focus on the second prong first.

Generally, an officer's use of deadly force is constitutionally reasonable "[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or others." *Crane v. City of Arlington*, 50 F.4th 453, 463 (5th Cir. 2022) (citing *Tennessee v. Garner*, 471 U.S. 1, 11 (1985)). Accordingly, "if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given." *Garner*, 471 U.S. at 11–12.

Plaintiff's argument rests on the contention that Granado's body-camera footage shows him firing the disabling rounds at Ramirez *at the moment* Ramirez turned away and appeared to flee. ECF No. 40 at 16. This, coupled with Granado's exasperated statement: "did he have a gun?" immediately following the shooting, is what Plaintiff contends creates a genuine issue of material fact as to the reasonableness of Granado's action, hinging on whether Granado actually knew Ramirez had a weapon. *Id.*

But the Court must judge the reasonableness of an officer's actions "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Ballard v. Burton*, 444 F.3d 391, 402 (5th Cir. 2006). And to only judge the split second of the shooting manipulates the facts out of context. Plaintiff contends that Ramirez was not physically pointing the gun at officers when Granado shot him, but that overlooks the fact that Ramirez had just dropped and *picked up* his gun *during a physical struggle* to break free from another officer (i.e. avoid apprehension). ECF No. 34 at 31. This after a dangerous high-speed chase with armed-and-dangerous suspects who officers had

4

probable cause to believe were responsible for multiple drive-by shootings. *Id.* at 39. To the extent Plaintiff relies on Granado's statement: "did he have a gun?" immediately following the shooting, that assertion is belied by the weight of summary judgment evidence contrarily showing that officers already confirmed that Remirez had a gun as soon as he stepped out of the vehicle.

Thus, a reasonable officer at the scene would have had probable cause to believe that the suspects in the vehicle were involved in crimes "pos[ing] a threat of serious physical harm, either to the officer or others." *Crane*, 50 F.4th at 463. In this light, where a suspect re-engages an officer's attempts at apprehension by picking up his firearm while physically breaking free from another officer, "deadly force may be used if necessary to prevent escape." *Garner*, 471 U.S. at 11–12.

## CONCLUSION

Because Granado's use of deadly force was constitutionally reasonable under the circumstances of Ramirez's apprehension, Granado is entitled to qualified immunity. Accordingly, Granado's motion for summary judgment (ECF No. 32), is **GRANTED.** This case is **DISMISSED with prejudice.**

**SO ORDERED** on this **9th day of August 2024.**

Mark T. Pittman
UNITED STATES DISTRICT JUDGE